___



**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| IN RE: | ) | | |
| | ) | | |
| WENDI DOW LITTON, | ) | Case No.: | 15-12871-JDW |
| | ) | | |
| DEBTOR. | ) | Chapter | 11 |

___

| | | | |
|---|---|---|---|
| WENDI DOW LITTON, | ) | | |
| | ) | | |
| PLAINTIFF | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 15-01101-JDW |
| | ) | | |
| APPERSON CRUMP, PLC, | ) | | |
| | ) | | |
| DEFENDANT. | ) | | |

___

## MEMORANDUM OPINION[1]

This adversary proceeding came before the Court for trial on January 25, 2018, on the Complaint (A.P. Dkt. # 1)[2] filed by debtor/plaintiff Wendi

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

Dow Litton (the "Debtor") against creditor/defendant Apperson Crump, PLC (the "Defendant"), alleging that certain payments made to the Defendant are avoidable preferences under 11 U.S.C. § 547.[3] Craig M. Geno represented the Debtor at trial, and the Defendant was represented by Toni Campbell Parker. The Court admitted documents into evidence and heard testimony from the Debtor, the Defendant's president and chief manager, Marshall Criss, and Amy Strickland, an associate with the Defendant law firm. At the conclusion of the trial, the Court took the matter under advisement. For the reasons set forth herein, the Court finds and concludes that the payments at issue are not avoidable preferences under § 547.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334(b), and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc Dated August 6, 1984. This is a core proceeding arising under title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (F), and (O).

---

[2] Citations to the docket in the main bankruptcy case are to (Bankr. Dkt. # ); citations to the docket in the adversary proceeding are to (A.P. Dkt. # ).

[3] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

2

## II. PROCEDURAL HISTORY

On July 7, 2015, the Debtor filed her chapter 13 bankruptcy case in the United States Bankruptcy Court for the Southern District of Mississippi (Bankr. Dkt. # 1). The case was transferred to this Court on August 17, 2015, where venue is proper. The case was converted to chapter 11 on February 25, 2016 (Bankr. Dkt. # 135). On November 25, 2015, the Debtor filed the complaint against the Defendant, which she later amended (the "Amended Complaint")(A.P. Dkt. # 15). The Amended Complaint contained three counts. On April 17, 2017, the Court entered summary judgment in favor of the Debtor on Counts II and III, concluding that at no point did the Defendant have a valid attorneys' lien on the Debtor's property. (A.P. Dkt. # 40). In the remaining count, the Debtor seeks to avoid transfers totaling $75,000.00 made to the Defendant within 90 days of the petition date under 11 U.S.C. §§ 547 and 550.

## III. FINDINGS OF FACT[4]

Debtor entered into a retainer agreement with attorney Rachel Putnam, then a solo practitioner, in February 2014, pursuant to which Ms. Putnam agreed to serve as counsel to the Debtor in her divorce proceedings. The agreement provided specific payment terms, which were not adhered to

---

[4] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such. To the extent any of the conclusions of law are considered findings of fact, they are adopted as such.

3

for the most part. Ms. Putnam later became a member of the Defendant law firm, where she and the Defendant continued to represent the Debtor in contentious divorce proceedings in the Chancery Court of Coahoma County, Mississippi. The Defendant represented the Debtor in her lengthy and expensive divorce trial, which took place over more than 15 separate dates over the course of several months. After the trial, but before a ruling by the trial court, the Debtor terminated the Defendant in writing on June 3, 2015.

During the course of the Defendant's representation, the Debtor incurred significant legal bills. All payments other than the initial retainer[5] were made by wire transfer from the account of Debtor's father, Bill James Allen, directly into the Defendant's bank account. Two of these payments, totaling $75,000.00, were made by Mr. Allen to the Defendant within the 90 days immediately preceding the bankruptcy petition date: a wire transfer of $25,000.00 sent on April 9, 2015, and another wire transfer of $50,000.00, sent on May 15, 2015. The payments never went through the Debtor's bank account, and she had no authority to direct the amount or timing of the payments. The funds were never in the control of the Debtor, even momentarily.

---

[5] The initial retainer was paid outside the preference period and is not at issue here. 11 U.S.C. § 547(b)(4).

4

The payments made by Mr. Allen to the Defendant were not gifts to the Debtor. The evidence was clear that Mr. Allen and the Debtor considered the payments to be loans, evidenced by promissory notes signed by the Debtor. The relevant promissory notes are dated April 6, 2015 ($25,000), and May 12, 2015 ($50,000), and are identical except for the amount. The promissory notes provide as follows, in relevant part:

> For value received, the undersigned, Wendi Dow Litton, ("Borrower") an individual residing in Clarksdale, Mississippi, promises repayment on demand to the order of Bill James Allen, an individual residing in Roswell, New Mexico, the amounts incurred for attorney's fees, court costs, and other expenses undertaken in proceedings related to divorce from William Powell Litton, III. The charge of [$25,000.00 or $50,000.00] Dollars is presently due for legal representation for Borrower, but the total amount to be incurred is underdetermined. Therefore, Borrower will repay on demand and in due course.

The amounts due Mr. Allen under these promissory notes remain unpaid.

## IV.    CONCLUSIONS OF LAW

"In general, a 'preference' exists when a debtor makes payment or other transfer to a certain creditor or creditors, and not to others. Such favoritism is prohibited by 11 U.S.C. § 547(b) when a debtor is in bankruptcy." *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127 (10th Cir. 1986)(internal citation omitted). Section 547(b) of the Bankruptcy Code provides the elements of a preference:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee[6] may avoid any transfer *of an interest of the debtor* in property—
> > (1) to or for the benefit of a creditor;
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> > (3) made while the debtor was insolvent;
> > (4) made—
> > > (A) on or within 90 days before the date of the filing of the petition; or
> > > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> > (5) that enables such creditor to receive more than such creditor would receive if—
> > > (A) the case were a case under chapter 7 of this title;
> > > (B) the transfer had not been made; and
> > > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b)(emphasis added). The Debtor bears the burden of proving each of these elements by a preponderance of the evidence. *Danning v. Bozek (In re Bullion Reserve of N. Am.)*, 836 F.2d 1214, 1217 (9th Cir. 1988), *cert. denied*, 486 U.S. 1056 (1988). With regard to subsection (b)(3), a "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). This presumption serves to shift the burden of production to the Defendant, but not the burden of proof, which remains on the Debtor. *See Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d Cir. 1996).

---

[6] "[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties. . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).

6

The parties disagree as to several of these elements—particularly whether the Debtor was insolvent at the time of the transfers or whether the transfers allowed the Defendant to receive more than it would have in a case under chapter 7. The Defendant also asserts the affirmative defenses of ordinary course of business and new value. 11 U.S.C. § 547(c)(2) & (4). The Court never reaches these points of contention, however, because the Debtor failed to prove that the transfers were of an "interest of the debtor in property." *Begier v. IRS,* 496 U.S. 53, 58 (1990).

The United States Supreme Court has interpreted "interest of the debtor in property" to mean "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Id.* (holding that payment of trust fund taxes is not an avoidable preference, because funds held in trust for the government are not the debtor's property). This Court's fundamental inquiry, then, is whether the transfer diminished or depleted the Debtor's estate. *Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1355 (5th Cir. 1986), *reh'g denied*, 801 F.2d 395 (5th Cir. 1986)("For a preference to be voided under section 547, 'it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished'")(internal citation omitted); *See also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1117 (5th Cir. 1995)("[T]he primary consideration in determining

7

if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment."). In this case, it is undisputed that even though the Debtor is indebted to Mr. Allen for the amounts of the transfers, the transfers to the Defendant were made by Mr. Allen with his own funds directly to the Defendant. These funds would not have been property of the Debtor's estate, as the Debtor had no legal or equitable interest in the funds prior to the transfer. 11 U.S.C. § 541(a). The Debtor has simply substituted one creditor (the Defendant) for another (Mr. Allen). *Coral Petroleum*, 548 F.3d at 1356 ("If all that occurs in a "transfer" is the substitution of one creditor for another, no preference is created. . .").

Further, the Court of Appeals for the Fifth Circuit confirmed the validity of the earmarking doctrine in *In re Entringer Bakeries*, invoking the "control" test to determine whether the transferred money was property of the estate or if the funds were instead "earmarked" for a particular creditor. *Caillouet v. First Bank and Trust (In re Entringer Bakeries, Inc.)*, 549 F.3d 344, 349 (5th Cir. 2008). Here, like the debtor in *Coral Petroleum*, the Debtor at no time maintained control over the funds transferred to the Defendant. *Entringer Bakeries*, 549 F.3d at 349 (citing *Coral Petroleum,* 797 F.2d at 1359). Not only were the funds directly transferred from Mr. Allen to the Defendant (so there was never a "magical moment" where the funds

8

appeared in the Debtor's account), the promissory notes signed by the Debtor specified the debt for which the funds were earmarked – payment of the Debtor's attorneys' fees and expenses in her divorce litigation. *Id.* Accordingly, even if the funds had at some point been in the Debtor's possession or control, the transfers at issue would still not be avoidable preferences because the funds were earmarked to pay the Defendant.

## V. CONCLUSION

Accordingly, the transfers from Mr. Allen to the Defendant within the 90 days preceding the filing of the Debtor's bankruptcy petition are not avoidable preferences under 11 U.S.C. § 547(b). The funds that were transferred would not have been property of the Debtor's bankruptcy estate, were never within the Debtor's custody or control, and, in any event, were earmarked for the payment of the debt owed to the Defendant. A separate final judgment will be entered in accordance herewith.

##END OF OPINION##